ALBERT H. KOHLSTEDT, appellant, v. FARM BUREAU MUTUAL INSURANCE COMPANY, appellee.

No. 51731.

(Reported in 139 N.W.2d 184)

DECEMBER 14, 1965.

Charles E. Hird, of Jefferson, for appellant.

Floyd E. Page of Page & Nash, of Denison, for appellee.

THORNTON, J.—This is an "excess judgment" case. Plaintiff, insured, brought this action at law against his insurer to recover a balance of $10,000 in excess of a $15,000 policy of auto liability insurance held by plaintiff at the time he was involved in an accident November 10, 1960, and for interest and other damages. The accident case out of which this one arose is Nielsen v. Kohlstedt, 254 Iowa 470, 117 N.W.2d 900, wherein we reversed the judgment as to Kohlstedt's codefendant, Hutchinson, because the record therein was insufficient as a matter of law to show the plaintiff, Nielsen, was other than a guest in Hutchinson's car. This left the present plaintiff the sole defendant liable for the total judgment of $25,000.

This case was submitted to the jury and a verdict returned in favor of plaintiff, insured. The trial court sustained defendant's motion for judgment notwithstanding the verdict and plaintiff appeals.

I. The question for determination is the sufficiency of the evidence to show bad faith on the part of defendant, insurer. In excess judgment cases we have adopted the bad faith test, Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 97 N.W.2d 168. Negligence that shows or permits an inference of indifference to or disregard of the interest of the insured is material on that issue. Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 516, 122 N.W.2d 263, 266. Plaintiff's burden is to show bad faith by a preponderance of the evidence. No citation of authority is necessary. Rule 344(f)6, Rules of Civil Procedure.

Plaintiff's liability policy with defendant had limits for bodily injury of $15,000 for any one person, $30,000 for any one accident. Under the policy provisions defendant, insurer, has control of the case including litigation and settlement negotia-

tion and plaintiff is required to cooperate. The duty cast on the insurer is to conduct good faith investigation of all aspects of the case and to consider and propose settlement in good faith based on its investigation and apparent state of the law within policy limits. This means its employees and agents, including doctors and lawyers, must act in good faith. It is not required to compensate for plaintiff's failure to carry adequate insurance. Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 519, 122 N.W. 2d 263.

II. · The accident out of which this action arose occurred November 10, 1960, at seven a.m. at a gravel county road intersection with no traffic signs. Plaintiff here, alone in his car, was traveling east, the driver of the other car, Hutchinson, with three other persons riding with him, was traveling south. Plaintiff had the directional right-of-way. The right front of plaintiff's car struck the right rear of the other car in the southwest quadrant of the intersection. The plaintiff in the accident case, Nielsen v. Kohlstedt, 254 Iowa 470, 117 N.W.2d 900, riding in the right rear seat, was thrown from the car receiving severe facial and head injuries. The sun was in the eyes of both drivers, neither one saw the other until too late to avoid the collision. Hutchinson and his riders were bricklayers and tenders going to work. Plaintiff and Hutchinson reported the accident to defendant the same forenoon and each gave statements at that time. Defendant's adjusters promptly contacted the other occupants of Hutchinson's car. Nielsen, plaintiff in the accident case, was hospitalized and defendant's adjuster was unable to talk with him. The initial report on Nielsen was that his condition was serious and he might die. Within 30 days the accident suit was commenced for $25,000 naming plaintiff here and Hutchinson, driver of the other car, as defendants. The petition was amended on the first day of trial, increasing the prayer to $100,000. Defendant employed local counsel and advised plaintiff by letter the suit was in excess of his policy limits, if he wished he could employ separate counsel and if he had further questions he could contact the office of the general counsel or Mr. Edward S. White, local counsel, of Carroll, Iowa. Plaintiff contacted Mr. White and subsequently employed Mr. Bernard L. Willis of Lake City as his

personal attorney. Mr. White and Mr. Willis. appeared for and represented Kohlstedt, plaintiff here, in the accident case. Mr. James R. Hamilton of Storm Lake appeared for the other defendant, Hutchinson. Mr. Wendell Pendleton of Storm Lake represented plaintiff Nielsen. All of these lawyers are able and competent trial lawyers and so qualified at the trial.

We must consider the evidence in the light most favorable to plaintiff, rule 344(f)2, Rules of Civil Procedure. If there is substantial evidence from which the jury could properly draw an inference of bad faith plaintiff is entitled to a reversal. The defendant is not required to pay every offer of settlement within the policy limits. To show bad faith it must appear not only the settlement offer was reasonable but the insurer had no reasonable basis for its judgment the offer was not reasonable. The question is was the judgment of the insurer reasonable at the time, not was it correct in the light of subsequent events. Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 519, 122 N.W.2d 263.

III. Plaintiff's case as to liability is based on his own testimony, that of his attorney, Mr. Willis, Mr. Pendleton, the transcript of the accident case, and the discovery deposition of Mr. Edward F. Seitzinger, assistant general counsel of defendant. Plaintiff, of course, is entitled to the benefit of any favorable testimony produced by the defense.

Plaintiff's testimony did not disclose anything bearing on bad faith other than he was not notified of the various steps in settlement negotiations. Mr. Willis represented him personally from the time the action was started. And where Mr. Willis acquiesced or agreed with procedures to be taken involving judgment, plaintiff cannot now be heard to say such were unreasonable or constitute bad faith.

Mr. Willis' position as to the necessity of a medical examination and to opening settlement negotiations before the time of trial are such.

The defendant cannot be charged with failure to properly investigate the physical facts of the accident. The reports in evidence show this was done. And defendant is properly chargeable with knowledge of fact and law thus obtained. We think defendant is properly chargeable with knowledge the case would go to

342

the jury against their man, plaintiff here, at least, because of his failure to maintain a proper lookout. This was apparent from plaintiff's first reports to the insurer and that of the codefendant. Defendant knew Nielsen's injuries were serious but not the extent of such. Long before trial it knew Nielsen had returned to work. It also had the benefit of plaintiff's personal attorney, Mr. Willis', conference with Dr. Glen S. Rost. Mr. White asked Mr. Willis to contact the doctor and Mr. Willis testified:

"According to Dr. Rost the injuries to the plaintiff Nielsen were substantial. There was a severe brain injury. At that time he thought the man was going to die and I related that to Mr. White."

On the first day of the trial of the accident case at the time the petition was amended to increase the prayer to $100,000, Mr. Willis stated:

"* * *, the total damages here were twenty-five thousand, * * * we were not concerned and did not request an examination of the plaintiff. * * * Had you started out asking for $100,000 we would have requested an examination of this man, but you didn't do that."

Mr. Willis also testified Mr. White was agreeable at first to settling and stated they would take that up at Sac City (at the trial). Mr. Willis does not indicate such plan was then unacceptable.

 IV. The jury could properly find offers of settlement were made to Mr. White, of $8000 during the summer or fall sometime before trial, of $10,000 after taking plaintiff Kohlstedt's deposition the day the trial started, which were not communicated to plaintiff or Mr. Willis, that during plaintiff's case a $15,000 offer was made by Mr. Pendleton to Mr. White and apparently nothing was done, that oral demands to settle had been made by Mr. Willis on behalf of Mr. Kohlstedt, not only long before trial but at the start of and during the trial, and that Mr. White directed Mr. Willis to stay out of settlement negotiations. All of these constitute some evidence of bad faith but all combined would not be sufficient to show bad faith if defendant-insurer's refusal to settle was based on reasonable good faith grounds or it did in good faith attempt to settle within

policy limits. It would not be guilty of bad faith if the settlement figure of the plaintiff in the accident case at all pertinent times was in excess of policy limits. In other words, the plaintiff in the accident case cannot make an excess case by making a suggestion of settlement within policy limits and later raising the offer in excess of the limits. Both proposals and counterproposals must be reasonable in light of the facts and law known or chargeable at the time.

At the close of plaintiff's case Mr. Willis ascertained from Mr. Pendleton the case could be settled for $15,000 if settled promptly. In response to Mr. Willis' inquiry to whether the case could be settled for $15,000, Mr. Pendleton stated, "That is true at this time." Mr. Willis then made a written demand the defendant-insurer settle. Mr. White then dictated his resistance, which has been introduced in this record by plaintiff-insured. It contains the following:

"* * * in the opinion of its counsel, if there be any liability in this action to the plaintiff, it will be a liability jointly borne by both defendants, and that in the opinion of the insurer and its counsel any judgment rendered in this case cannot reasonably be expected to exceed $30,000, and will very probably be less than that amount, and thus, in the opinion of these parties, the defendant Kohlstedt is not reasonably expected to be subjected to liability beyond the limits of his policy."

From the deposition of Mr. Seitzinger, assistant general counsel for defendant-insurer, offered in evidence by plaintiff, we find a similar expression of his opinion of the case. It appears from the deposition his opinion was based on the file in his office and phone conversations during the trial with Mr. White. He states the claims committee of which he was a member placed a value on the case of $15,000 after a phone conversation with Mr. White concerning medical testimony. Authority was given Mr. White to pay $7500 dollar for dollar with the insurer of the other defendant. Both Mr. White and Mr. Seitzinger then knew there was a jury question as to Kohlstedt, and based their opinion on the medical testimony, the fact their man had the directional right-of-way, it was their opinion the passenger in the other car, plaintiff Nielsen in the accident case, was not a guest. Pursuant

to further phone conversations, during the trial Mr. Seitzinger authorized Mr. White to pay $9000 in settlement if the other insurer would pay $6000. Mr. Hamilton indicated his willingness to proceed on this basis but when Mr. White made this proposal to Mr. Pendleton his settlement figure was raised to $20,000, and later raised to $25,000. No other settlement proposals were made by defendant until after the verdict when a $12,500 offer was made to settle one half of the judgment, this apparently was ignored.

The question, as indicated above, is, was there evidence in the record from which the jury could properly find the position of defendant and its local counsel was unreasonable, not now, but at the time?

Its position the other driver would be held in the case was based solely on the opinion the plaintiff, Nielsen, was other than a guest. It was not contended or suggested the other driver was reckless or under the influence of intoxicating liquor. Section 321.494, Code, 1958. There was sufficient evidence of his negligence to raise a jury question.

In addition to the opinions of Mr. White and Mr. Seitzinger, the plaintiff's evidence shows the following on the question of whether Mr. Nielsen was a guest in the car of the codefendant, Mr. Hutchinson. Mr. Willis, plaintiff's personal attorney, testified: "* * * there was a divergence of opinion concerning the guest statute. * * * I believed it a very close question * * *. The court allowed the jury to consider the question. * * * You couldn't say Mr. White was right or wrong in that case in believing that the plaintiff was not a guest. You get into the realm again where it is indefinite."

Mr. Pendleton, called by plaintiff, after referring to Mr. Kohlstedt's deposition, the testimony of Doctor Rost and of Mr. Nielsen, testified, "I felt very confident that we had both the defendants in on the liability issue."

Thus we have the opinions of the trial court, Mr. Pendleton and Mr. Willis supporting the position taken by Mr. White and Mr. Seitzinger. The only attorney in the case taking a contrary view was Mr. Hamilton. Mr. White's opinion was expressed by him at the close of the plaintiff's case in the accident case, not at

some later time. At that time he had the benefit of all of plaintiff's evidence on the guest issue.

If defendant's position as indicated by its counsel was unreasonable it has no excuse or reason for its failure to settle promptly when the $15,000 offer was made as it valued the case at that amount.

Its position contains two propositions, 1, that in no event would the verdict exceed $30,000, and would probably be less than that amount, and 2, the liability would be joint, i.e., the codefendant, Hutchinson, would be held in the case because the plaintiff, Nielsen, was other than a guest in the car, thus each defendant would be liable for only one half of the recovery. It knew codefendant, Hutchinson, was insured by a responsible insurer.

Defendant's judgment on the first proposition has not only been vindicated by the jury verdict but plaintiff does not point to any testimony now that would make the position taken unreasonable. He does complain of inadequate medical examination by Dr. Robert Hayne, defendant's expert, and failure of Mr. White to confer with the doctor before putting him on the stand. The plain fact is the jury obviously did not believe Mr. Nielsen's medical expert when he said Mr. Nielsen was 50-55 percent disabled when in fact he was regularly doing the same work as before. This of course is not what damaged plaintiff when the verdict was only $25,000. His damage comes because the codefendant was held by us not to be liable as a matter of law. If there is evidence from which a jury could properly find defendant's local counsel and assistant general counsel did not take the position Mr. Nielsen was other than a guest in good faith, plaintiff is entitled to prevail. We find none.

As indicated, the trial Judge, Mr. Willis and Mr. Pendleton were of the opinion the question was for the jury.

V. In this regard plaintiff argues it was defendant's duty to pay the $15,000 offer and, if it felt the codefendant was liable, sue him for contribution. We are not prepared to say failure to so proceed on the part of an insurer under this record showing reasonable grounds for the position taken is evidence of bad faith. In a sense such requirement would make the insurer com-

pensate for the insured's failure to carry more insurance. The insurer is entitled to take into consideration in reaching its judgment on whether to settle and for how much the exact same factors anyone else would. Where two defendants are sued for a single injury no reason is advanced why each may not consider the liability of the other in determining its course of action. In Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 1140, 1141, 97 N.W.2d 168, the right of an insurer to seek contribution is considered. The test is reasonableness. Was there a good faith reason for the position taken? See Mendota Electric Co. v. New York Indemnity Co., 175 Minn. 181, 221 N.W. 61.

He also urges insurer failed to follow the advice of its assistant claims manager. His advice is found in a brief to the claims committee wherein he stated, "* * * Unless we can impute the negligence of the claimant driver to the claimant passenger I think we had better be prepared to make a contribution or pay the entire bill for this injury.", and in a memo to an adjuster wherein he said, "* * * I foresee trouble as far as passengers are concerned. If you can close these passengers out for a reasonable sum at anytime why don't you go ahead and do so and we will have them behind us."

The advice in the brief to the claims committee indicates a somewhat different view of liability from that taken by Mr. White and Mr. Seitzinger and the direction is not solely to pay but to be prepared to contribute or pay the entire bill. Pursuant to the advice in the memo, settlements were made with the other two passengers, one for $136 and the other for $150.

We do not think the advice was disregarded. Nor was it the duty of Mr. Seitzinger and Mr. White to follow it if in good faith their determination was otherwise. The fact defendant settled the other passengers' claims for the small amounts indicated is not evidence it thought it was solely liable. In any event it was liable for one half. See State Automobile & Casualty Underwriters v. Farm Bureau Mutual Insurance Co., 257 Iowa 56, 131 N.W.2d 265.

Plaintiff also urges the failure to appeal is evidence of bad faith. Defendant filed a notice of appeal but did not file a brief and argument or argue the case. Its reason was the same

as its reason for demanding contribution from the codefendant, that the codefendant was equally liable. And that it was to the plaintiff's interest in the accident case to hold the codefendant in the case, such plaintiff's counsel was competent and any work on its part would merely be a duplication.

On November 7, 1961, right after the trial, plaintiff's personal attorney, Mr. Willis, seemed satisfied with the result and that an appeal would not be fruitful. In a letter to Mr. White on that date, he wrote, "I think we did alright by keeping the codefendant in the boat. All in all you didn't come out too bad and I trust you are not interested in an appeal." On February 7, 1962, he wrote a letter to Mr. White expressing a strong interest in an appeal. He therein wrote, "I also hope I am correct in that you are going to resist Brother Hamilton to the last bit, * * *."

In both of these letters Mr. Willis recognizes the reason for defendant's position. He does not suggest any other reason for the insurer appealing. And we do not find any reason urged as to how an appeal on any other grounds would have changed the result.

Plaintiff suggests by appealing the possibility of obtaining a post-judgment settlement is kept open due to the delay involved, citing Smoot v. State Farm Mutual Automobile Insurance Co., 299 F.2d 525, 533. In this case such possibility was kept open by the codefendant's appeal. It is not necessary to determine whether an insurance carrier is bound to appeal such a judgment under other circumstances. It is enough here that there is no causal connection between the failure to appeal and the damage suffered by plaintiff. It is not contended the guest statute issue was inadequately presented to this court by Mr. Pendleton in Nielsen v. Kohlstedt. His harm came because of defendant's error in judgment on the guest statute.

A mere mistake in judgment is not enough to show bad faith. Ferris v. Employers Mutual Casualty Co., 255 Iowa 511, 523, 122 N.W.2d 263, 270.

The same is true of plaintiff's complaints of negligent investigation of the case as to facts and medical evidence and the defendant did not keep him or his counsel advised of settle-

348

ment offers, it is not suggested he at anytime offered to participate in any settlement. Plaintiff argues defendant knew at all times plaintiff was liable and it knew if the codefendant was let out of the case plaintiff would be solely liable, also that defendant never claimed plaintiff would not be liable in the accident case. All these things are true and are admissible to show the state of mind of defendant and its agents, but where the sole ground for defendant's position in regard to settlement is either not connected with them, or its judgment on holding the codefendant in the case is not unreasonable, these matters urged do not make a submissible issue of bad faith.—Affirmed.

All JUSTICES concur except JUSTICE MASON, who takes no part, and JUSTICE BECKER, who dissents.