**HAYES BROTHERS, INC.,**
**Plaintiff–Appellee,**

v.

**ECONOMY FIRE & CASUALTY COMPANY, Defendant–Appellant.**

**No. 80–1022.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1980.

Decided Nov. 25, 1980.

Stuart R. Lefstein, Rock Island, Ill., for defendant–appellant Economy Fire & Cas. Co.

William C. Fuerste, Stephen J. Juergens, Dubuque, Iowa, for plaintiff–appellee, Hayes Bros., Inc.

Before HEANEY and BRIGHT, Circuit Judges, and HUNGATE, District Judge.*

HUNGATE, District Judge.

Appellant, Economy Fire & Casualty Company [Economy], appeals an award of compensatory and punitive damages in an "excess judgment" action brought by appellee, Hayes Brothers, Inc. [Hayes]. We affirm as to the award of compensatory damages, and reverse as to punitive damages.

Hayes filed this "excess judgment" action against its insurer, Economy, based on Economy's failure to accept a policy limit demand to settle a tort action, *Lee v. Hayes*, No. 76–27–D (S.D.Iowa Nov. 19, 1976).

A jury returned a verdict against Economy in the amount of $119,748 compensatory damages, representing the difference between the $50,000 policy limits and the verdict entered in the *Lee* action. In addition,

* The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri, sitting by designation.

the jury returned a verdict in the amount of $30,000 punitive damages. The trial court denied Economy's timely demands for directed verdict, a judgment notwithstanding the verdict, and a new trial. A notice of appeal was timely filed.

Economy raises the following issues for appellate review: (a) did substantial evidence show Economy acted in bad faith by failing to settle Lee's claims against its insured, Hayes? (b) should compensatory damages be limited to $40,000 and punitive damages be disallowed? (c) is a new trial required because of alleged evidentiary and jury instruction errors?

### Evidence of Bad Faith

Economy argues that, applying Iowa law,[1] this Court must find "substantial evidence" of bad faith before the jury verdict may be affirmed. *Trask v. Iowa Kemper Mut. Ins. Co.*, 248 N.W.2d 97, 98 (Iowa 1976). Hayes replies that, under Iowa law, the burden at the trial stage is to show by a preponderance of the evidence that the insurer acted in bad faith. *Koppie v. Allied Mut. Ins. Co.*, 210 N.W.2d 844, 846–47 (Iowa 1973).

Once a verdict of bad faith is entered against an insurer and the insurer assails the verdict on the ground that it was not factually supported, the appellate court must determine if there is substantial evidence from which the jury could properly draw an inference of bad faith. *Kohlstedt v. Farm Bureau Mut. Ins. Co.*, 258 Iowa 337, 139 N.W.2d 184, 189 (1965).

The evidence reveals that after a pretrial investigation and evaluation of Lee's claims, Economy knew that Lee was seriously injured and recognized that damages against its insured could substantially exceed the $50,000 policy limits. As the date of trial approached, settlement negotiations were initiated between Economy's attorney and Lee's attorney. On November 3, 1976, Economy's attorney received the following letter from Lee's counsel:

1. Applicable in this diversity action pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

This letter shall serve as our formal demand for settlement in the above–captioned matter at the policy limits covering the defendant, which we understand from your Answers to Interrogatories to be $50,000.

Our demand will be in effect until November 8, 1976. At that time, if the demand has not been accepted, we shall withdraw it forthwith and proceed to trial in this matter . . . .

We shall await your response to our demand. Should Economy Fire & Casualty Company choose to ignore our demand, we will construe this as a refusal on its part to negotiate this matter in good faith.

Economy responded with a counteroffer of $30,000, which Lee rejected. On November 5, 1976, Economy's counsel advised Hayes of Lee's settlement demand and solicited the comments of the insured. Hayes indicated that the policy limits should be accepted and the matter concluded.

On the afternoon of November 8, 1976, Economy offered the sum of $45,000, which was rejected. Lee told his attorney that he had finished negotiating and wanted to go to trial. When Economy offered full limits of the policy on November 9, 1976, the offer was rejected by Lee and his counsel.

■ The mere failure to settle a claim within policy limits is not sufficient to show an insurer acted in bad faith. *Ferris v. Employers' Mut. Cas. Co.*, 255 Iowa 511, 517–18, 122 N.W.2d 263, 266 (1963). The trial court properly instructed the jury:

In order to prove that defendant acted in bad faith in failing to accept Lee's alleged offer to settle his claim for the limits of the plaintiff's insurance policy with the defendant, plaintiff must establish that defendant did not have a reasonable basis for failing to accept the alleged offer before it was withdrawn.

■ Substantial evidence shows that Economy failed to take steps to effectuate a prompt, fair settlement of Lee's claims after Hayes' liability had become clear and Economy reasonably should have anticipated that failure to settle would result in a judgment exceeding the insurance policy limits. On November 5, 1976, the head of Economy's legal department advised his superior:

I feel we have a 25% chance of not guilty, a 25% chance of a verdict within the policy limit by compromise verdict, and a 50% or better chance of an excess verdict . . . .

I would like to try the case. However, my economic judgment says we're going to lose and the verdict will exceed our policy limit, and any hopes of a not guilty or compromise verdict are offset by the danger of an excess verdict.

*See Henke v. Iowa Home Mut. Cas. Co.*, 250 Iowa 1123, 1131, 97 N.W.2d 168, 174 (1959), considering an insurer's failure to settle within policy limits às evidence of bad faith if it knows that it has no more than an equal chance of winning the case and if the case is lost the verdict would exceed the policy limits.

Informed of Lee's settlement offer at the policy limits, Hayes' personal counsel advised Economy:

I feel liability in this case is pat and that in view of all the circumstances, including Mr. Lee's injuries, that the settlement offer is reasonable and should be accepted.

However, rather than accepting Lee's policy limit offer of $50,000, Economy offered $45,000 on November 8, 1976. As set forth in its settlement offer, Lee withdrew its policy limit demand.

Economy argues that Lee's simultaneous rejection of Economy's $45,000 settlement offer and withdrawal of the policy limit demand were not foreseeable.

The record is replete with forewarnings of Lee's termination of settlement negotiations in addition to the deadline explicit in Lee's policy limit demand. For example, in rejecting the initial $30,000 counteroffer, Lee's counsel wrote to Economy that:

In my judgment, the insurer, in attempting to shave monies off of policy limits, has generated a situation in which it will, at a later date, be held to be in bad faith.

The parties' conduct in light of the imminent trial setting indicates the urgency of a prompt response to Lee's policy limit demand to avoid the expense and inconvenience of heavy trial preparations. *Compare Koppie v. Allied Mut. Ins. Co., supra* at 848, finding no jury issue where there was an evidential vacuum regarding how an insurer viewed the claim at the time of settlement negotiations.

Economy's management of the settlement negotiation shows a disregard for the interest of its insured in an effort to avoid paying the policy limit even though its refusal to settle exposed the insured to great financial risk. *See Kooyman v. Farm Bureau Mut. Ins. Co.*, 267 N.W.2d 403, 407 (Iowa 1978), requiring an insurer to give equal consideration to the interest of its insured, as well as itself, in evaluating a settlement demand.

■ Notwithstanding substantial evidence that the reasonable manner of disposing of Lee's claim would have been prompt acceptance of Lee's policy limit demand, Economy argues that excess liability cannot be based on its failure to accept Lee's offer because the settlement could not be effective absent the consent of the worker's compensation carrier for Lee. *See Henke v. Iowa Home Mut. Cas. Co., supra*, 250 Iowa at 1130, 97 N.W.2d at 173, enunciating the general principle that an insurer cannot be held liable for refusal to settle within the policy limits where the proposal of a claimant was merely conditional.

Based on worker's compensation benefits paid to Lee, the compensation carrier had claimed a lien, pursuant to Iowa Code § 85.22, against any settlement proceeds paid by anyone to Lee in the action against Hayes. Although not technically asserting rights under the worker's compensation act, Economy contends that Hayes failed to present clear and definite evidence that the parties had complied with the following provisions of Iowa Code § 85.22(3):

> Before a settlement shall become effective between an employee [Lee] ... and such third party who is liable for the injury [Hayes], it must be with ... the consent of the employer or insurer [the worker's compensation carrier], in case the settlement is between the employee and such third party ....

After properly instructing the jury on the provisions of § 85.22, the trial court directed the jury to determine whether Hayes had established that the worker's compensation carrier had consented to the offer made by Lee's counsel. Only upon finding consent was the jury to proceed to the other issues in the case.

Economy asserts that the trial court erred in submitting "consent" issues to the jury and insists that, as a matter of law, Hayes failed to meet its burden of showing clear and definite evidence that the case could be settled within the policy limits based on a nonconditional offer from the injury claimant.

Economy relies on *Coe v. State Farm Mut. Auto. Ins. Co.*, 66 Cal.App.3d 981, 136 Cal.Rptr. 331 (Cal.App.1977). While jury determinations may show intended compliance with the state's worker's compensation act, the California court held, as a matter of law, that absent the written consent of the State Compensation Insurance Fund, acceptance of a settlement offer would have abdicated an insurer's duty of good faith by exposing the insured to a recoupment action by the Fund. *Id.*, 66 Cal.App.3d at 996, 136 Cal.Rptr. at 338.

The California precedent is not controlling in interpreting the Iowa worker's compensation act. While California law requires the written consent of the State Compensation Insurance Fund, the Iowa statute does not require consent of a compensation carrier explicitly to be in writing when the settlement is between the employee and a third party. *Compare* Cal.Lab. Code §§ 3859 & 3860(a) (West) *with* Iowa Code § 85.22(3).

Thus, under Iowa law, it was not reversible error for the trial court to submit to the jury the factual questions regarding the compensation carrier's knowledge of Lee's settlement offer and its consent thereto.

Finding substantial evidence to support the jury's finding that Economy acted in bad faith by failing to secure a prompt settlement of the case for its reasonable value after the liability of its insured had become clear, the trial court's judgment will be affirmed.

### Award of Damages

■ In the alternative, Economy argues that compensatory damages should be limited to $40,000.

A few days before trial, Hayes received a demand from Lee to settle the tort action by paying $40,000 of its own funds after Economy had tendered the $50,000 policy limits. Economy argues that any damages allegedly resulting from Economy's conduct ceased when Hayes had an opportunity to settle the case and could have limited excess liability to $40,000.

Hayes distinguishes its failure to settle from Economy's rejection of Lee's demand for the policy limits. As Hayes' liability insurance carrier, Economy assumed primary responsibility for investigating and evaluating Lee's claims. *See Henke v. Iowa Mut. Cas. Co., supra,* 97 N.W.2d at 173, imposing a duty on the insurer to conduct settlement negotiations in good faith because the insurer controls the litigation.

Therefore, the Court finds no merit in Economy's assertion that Hayes should be held to the same standard of care for failure to accept Lee's settlement demand. The trial court's award of compensatory damages in the amount of $119,748 is affirmed.

■ Next, Economy argues that the jury award of punitive damages should be reversed. The trial court instructed the jury that punitive damages can be awarded if an act or omission was done "in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the plaintiff."

In other jurisdictions, punitive damages have been awarded in excess judgment actions based on an insurer's wrongful refusal to settle within policy limits. *E. g., Cain v.* *State Farm Mut. Auto. Ins. Co.,* 47 Cal. App.3d 783, 121 Cal.Rptr. 200 (1975), affirming an award of punitive damages against an insurer which failed to give equal consideration to the interests of its insured when refusing a settlement demand. *But see Butchikas v. Travelers Indem. Co.,* 343 So.2d 816 (Fla.1976), denying punitive damages where the evidence did not show misrepresentation or a continued course of dishonest dealing on the part of the insurer.

Under Iowa law, the allowance of punitive damages rests with the factfinder. *Young v. Des Moines,* 262 N.W.2d 612, 620 (Iowa 1978). Accordingly, a jury's award of punitive damages will not be disturbed unless the evidence could not support the award as a matter of law. *Kurtenbach v. TeKippe,* 260 N.W.2d 53, 54 (Iowa 1977).

The question upon review is whether it is possible to infer from Economy's actions wrongful conduct in willful or reckless disregard of Hayes' rights. *See Syester v. Banta,* 257 Iowa 613, 628–29, 133 N.W.2d 666, 676 (1965), enunciating the substantive principle under Iowa law that punitive damages are appropriately awarded to deter illegal or improper acts.

Accepting Hayes' version of the facts as true, the Court cannot say as a matter of law that Hayes raised a triable issue of fact with respect to punitive damages. *Compare Meyer v. Nottger,* 241 N.W.2d 911, 922 (Iowa 1976), reversing an entry of summary judgment and remanding for trial court proceedings to determine, whether upon the facts of the particular case, an award of punitive damages would be appropriate to punish the offending party or to discourage others from similar conduct.

While the evidence does show that Economy attempted to avoid paying the policy limits in disregard of Hayes' exposure to excess liability, the insurer's conduct does not support an inference that Economy acted with complete indifference to Hayes' interests. On the day Lee's settlement demand expired, Economy submitted a counteroffer of $45,000, which was $5,000 less than the policy limit. Further, Economy

offered the full policy limits the day after Lee withdrew his settlement demand.

Therefore, the trial court's award of punitive damages is reversed.

### Request for New Trial

Economy asserts that it is entitled to a new trial based on the following alleged errors by the trial court.

■ First, Economy asserts that the trial court erred in admitting Economy's financial statement into evidence.

Applying Iowa law, the trial court properly admitted the financial statement on the issue of punitive damages.

As set forth above, the trial court's award of punitive damages has been reversed. Therefore, Economy has not been prejudiced by the admission of its financial statement.

■ Second, Economy argues that the trial court erred in refusing to admit evidence related to possible future reopening of Lee's settlement agreement with the worker's compensation carrier.

Finding nothing in the record to show that future rights would have been a consideration in whether the tort action between Lee and Hayes could have been settled, the trial court properly refused the offered evidence as incompetent, irrelevant, and immaterial to any issue in the case.

■ Third, Economy contends that the trial court erred by refusing to admit deleted portions of a letter from the attorney for Hayes dated December 20, 1976, addressed to Economy's counsel stating that "I did not attribute bad faith to either you or Henry." Asserting that the letter was substantive evidence going to the issue of the counsel's state of mind with respect to the alleged bad faith, Economy insists that the letter should have been admitted.

While recognizing that the letter would have been admissible as a party's admission against its interest, the trial court properly exercised its discretion in refusing to admit the letter as substantive evidence.

■ Fourth, Economy asserts that the trial court erred by refusing to permit an expert witness to testify about the reasonableness of Lee's conduct of the settlement negotiations.

■ The admissibility of expert opinions lies in the sound discretion of the trial court. *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976).

This Court finds no error in the exclusion of the proposed expert testimony.[2] *See Vandell v. Roewe*, 232 Iowa 896, 6 N.W.2d 295 (1942), enunciating the long–standing principle that questions of "reasonableness" are outside the scope of proper expert testimony.

■ Fifth, Economy contends that the trial court's instructions usurped the jury's consideration of the issue whether Lee had authority to make the policy limit demand on November 3, 1976, and, accordingly, whether the case was ever susceptible of being settled at the policy limit.

Hayes argues that, notwithstanding any issues relating to the actual authority of Lee's counsel to make the policy limit demand, the counsel had apparent authority to bind Lee if Economy had accepted the demand. *See* 3 Am.Jur.2d "Agency" § 91 at 492.

The trial court's instructions properly directed the jury to determine the actual facts confronting Economy during the settlement negotiations. *See Koppie v. Allied Mut. Ins. Co., supra.*

As set forth above, substantial evidence supports the jury's finding that defendant acted in bad faith in not accepting the

---

**2.** As an evidentiary matter, the questions addressed to the expert were irrelevant to the crucial issue in the case: whether Lee's $50,000 settlement offer was reasonable when made and open for acceptance. Whether Lee's rejection of Economy's $45,000 settlement offer and

Lee's subsequent termination of negotiations were reasonable or not is only marginally relevant at best, for Lee acted well within his rights in terminating the settlement negotiations as and when he did.

policy limit demand while it was outstanding.

 Finally, Economy argues that the trial court erred in failing to instruct the jury regarding Economy's right to engage in settlement negotiations.

Finding no error affecting the substantial rights of the parties on the issue of Economy's bad faith in failing to accept Lee's policy limit demand, neither reversal nor a new trial is required as to the award of compensatory damages. 28 U.S.C. § 2111; Rule 61, Fed.R.Civ.P.

Therefore, the judgment against Economy as to the award of compensatory damages is affirmed and as to punitive damages is reversed.