Jane HARDY, as Administrator of the
Estate of Duane Hardy, Deceased
Plaintiff-Appellant/Cross-Appellee,

v.

BRITT–TECH CORPORATION, A Corporation, Defendant-Appellee/
Cross-Appellant.

No. 84–477.

Court of Appeals of Iowa.

Aug. 29, 1985.

George E. Wright of Napier, Wright & Wolf, and A.F. Craig, Jr. of Craig, Wilson & Flickinger, Fort Madison, for plaintiff-appellant/cross-appellee.

Larry Cohrt of Swisher & Cohrt, Waterloo, for defendant-appellee/cross-appellant.

Heard by OXBERGER, C.J., and HAYDEN, and SACKETT, JJ.

SACKETT, Judge.

Plaintiff appeals from the trial court's order granting a judgment notwithstanding the verdict and sustaining a motion for new trial in the plaintiff's product liability suit.

In reviewing the grant of a judgment notwithstanding the verdict, we view the evidence in the light most favorable to the plaintiff and consider "only evidence favorable to the plaintiff whether or not it is contradicted." *Loudon v. Hill,* 286 N.W.2d 189, 192 (Iowa 1979); *Miller v. Young,* 168 N.W.2d 45, 50 (Iowa 1969). If there is substantial evidence from which the jury could properly draw an inference in favor of the plaintiff, the court will reverse the judgment notwithstanding the verdict. *Meeker v. City of Clinton,* 259 N.W.2d 822, 828 (Iowa 1977); *Kohlstedt v. Farm Bureau Mutual Insurance Co.,* 258 Iowa 337, 341, 139 N.W.2d 184, 186 (1965). The grant of a judgment notwithstanding the verdict is proper where there is no substantial evidence concerning one of the elements plaintiff must prove. *Dennett v.*

*City of Des Moines*, 347 N.W.2d 691, 692 (Iowa App.1984). However, if reasonable minds could differ regarding the issue, it is proper to send the question to the jury and their verdict will be upheld. *Id.*

Decedent, Duane Hardy, purchased a device called a "power washer" or "industrial pressure washer." The machine was manufactured by Defendant, Britt-Tech Corporation. The machine delivers a high-powered stream of water or water combined with soap for the purpose of cleaning large machines. It consists of electrical and mechanical components encased in a cover and a long hose with a "wand" or gun at the end which contains a device for controlling the spray of water. Within the enclosed portion of the machine is a motor and a transformer. The purpose of the transformer is to change the 220 volts from which the machine operates to a safer 24 volts, which is then carried to the switches in the handle. In 1982 Duane purchased the machine from his brother Russell, who had bought it new in 1973.

A few months after he obtained the machine, Duane was using the washer when his sister heard him scream. When she and Duane's wife found him, they discovered he had been electrocuted. They could not resuscitate him and he was pronounced dead at the hospital.

Duane's widow and administrator, Jane, brought suit against the defendant. The plaintiff's and defendant's experts both agreed that Duane was electrocuted because there was a short in the transformer. Plaintiff's expert testified at trial that the short occurred because of pressure from tape outside a terminal protector which caused the protector to come in to contact with low-voltage wiring. He concluded the insulation was insufficient and that the transformer was defective at the time it was manufactured. The expert further testified that the wand could have been grounded and the switches in the wand could have been made safer by enclosing them, at a low cost. With these precautions, even if the transformer had shorted, electrocution could have been avoided.

At sometime prior to his death, Duane had taken the handle apart and repaired a loose wire with a nonfactory crimp. The cover enclosing the motor and transformer was not used at times, thus exposing the transformer. Plaintiff's expert testified the repairs on the washer did not cause Duane's electrocution.

## I. Motion For Judgment Notwithstanding The Verdict

█ In order to prevail, the plaintiff must prove that the machine was manufactured by the defendant in a defective condition which is unreasonably dangerous when used in a foreseeable manner. *Osborn v. Massey-Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa 1980). It must also be shown the defendant was in the business of manufacturing such products and that the product was expected to and did reach the consumer without substantial change in condition. *Id.* Further, plaintiff must prove both proximate cause and damages. *Id.* Defendant claims that plaintiff has not sufficiently shown that the machine was in a defective condition when it reached the plaintiff, and argues that there were a considerable number of repairs and alterations. It further claims there is not enough proof to show the machine was unreasonably dangerous.

█ If the machine had been altered, the defendant can still be held liable but only if the plaintiff can show it is foreseeable that the alteration would be made and the change does not unforeseeably render the product unsafe. *See Craven v. Niagara Machine and Tool Works, Inc.*, 425 N.E.2d 654, 655 (Ind.App.1981).

Defendant points out that the machine was extremely dirty and appeared to have been subjected to a great deal of use, that it was operated without the lid in place, that it had holes and gouges in the container, that the O rings had been replaced, and that antifreeze apparently had not been put in the unit.

The trial court, after the return of a jury verdict, sustained defendant's motion for directed verdict made at the time of trial and defendant's motion for judgment not-

withstanding the verdict. In sustaining the motions, the trial court ruled the plaintiff failed to establish:

(1) The power washer was unreasonably dangerous at the time of sale.

(2) The power washer reached plaintiff's decedent without a substantial change in its condition. The basis of this reasoning included the general appearance of the machine, the hole made in the cover of the box housing the transformer which coincided with a hole in the washer housing, the evidence of arcing on the transformer, and the reconnected terminal wires.

■ We agree with the trial court that there is substantial evidence in the record that the machine itself was altered during its life. However, we do not determine that to be the issue here.

Plaintiff's cause of action is predicated on an alleged defect in one component part —"the transformer." Even though the trial court determined that changes had been made to the machine, defendant's expert testified those changes would not have affected the function of the transformer.

Considering the evidence in the light most favorable to plaintiff, the jury can determine that the changes were not made to, nor did they affect, the function or operation of the transformer. The motion for judgment notwithstanding the verdict should be reversed.

## II. Motion For New Trial

Prior to deciding this appeal, we ordered a limited remand directing the trial court to rule on the motion for a new trial by defendant in compliance with Iowa Rule of Civil Procedure 248(a). Defendant made, in addition to a motion for judgment notwithstanding the verdict, a motion for a new trial. Iowa R.Civ.P. 244, which governs the new trial motion, provides:

The aggrieved party may, on motion, have an adverse verdict, decision or report or some portion thereof vacated and a new trial granted, for any of the following causes, but only if they materially affected his substantial rights;

\*     \*     \*     \*     \*     \*

(d) excessive or inadequate damages appearing to have been influenced by passion or prejudice;

\*     \*     \*     \*     \*     \*

(f) That the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law;

The trial court held:

[T]he court finds ... the verdict to be the result of passion and prejudice on the part of the jury in that only $10,000 was awarded to the estate of plaintiff's decedent. Such verdict was contrary to the evidence and instructions.

After making such findings, the trial court determined the motion for new trial was moot and failed to rule on it. A conditional ruling on the new trial was required by Iowa R.Civ.P. 248(a):

If the motion for judgment notwithstanding the verdict provided for in R.C.P. 243 is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

The trial court on remand sustained the motion for a new trial. The jury awarded Jane $1,500,000 personally, $225,000 to her as administrator of the estate on behalf of her three children, and $10,000 to her as administrator of the estate. The trial court determined that the award to Jane and the children was influenced by passion and prejudice because the award to the estate was less than the award to the family.

■ In ruling upon a motion for new trial, broad but not unlimited discretion is vested in the trial court. We are slower to interfere with the grant of that relief than with its denial. However, the discretion so accorded must have some support in the record. *See Lappe v. Blocker*, 220 N.W.2d 570, 572 (Iowa 1974). One of the elements of damage in a wrongful death action is the

present worth or value of the estate decedent would reasonably be expected to have saved and accumulated as a result of his or her efforts between the time of death and the end of his or her natural life had he or she lived. *Iowa-Des Moines National Bank v. Schwerman*, 288 N.W.2d 198, 201 (Iowa 1980).

██ In *Schmitt v. Jenkins Truck Lines Inc.*, 170 N.W.2d 632, 661 (Iowa 1969), the supreme court outlines the measure of damages under section 613.15:

1. The present worth or value of the estate which decedent would reasonably be expected to have saved and accumulated as a result of his efforts between his death and the end of his natural life had he lived.

2. An award of interest on the reasonable funeral expenses of decedent for such length of time as it was prematurely incurred, not to exceed either the reasonable cost of the funeral for a person of decedent's social and financial standing or the amounts claimed therefor.

3. Recovery for all elements of damages sustained by the wrongfully injured person from the time of injury until the date of his death including those elements of damages permitted by *Fitzgerald v. Hale*, 247 Iowa 1194, 78 N.W.2d 509 (1956).

4. The present worth of the value of the services and support which he presumably would have contributed to his wife and children, or both, but for his untimely death.

The jury awarded the estate $10,000. The $10,000 amount included items 1, 2, and 3. The award to the wife and children was item 4.

The funeral expense was $6,456.56. Because decedent's life expectancy was 46.93 years, the funeral expense is less than the interest for premature payment. The medical bills were $898.70. The funeral expense (item 2) and medical expense (item 3) would total $7,355.26, leaving the award for item 1 to be only $2,644.74.

The jury determined the present worth of the support decedent would provide his family to be $1,725,000. They determined the present day worth of his accumulated estate to be $2,644.74. There is support for the trial court's determination that the award to Jane and the children was influenced by passion. The trial court did not abuse its discretion in granting a new trial. We affirm the trial court on that ground and remand for a new trial.

### III. Cross-Appeal

Defendant has further cross-appealed claiming error in submitting certain instructions, refusing a special instruction, and overruling an objection made by defendant.

██ In listing elements to be proven by the plaintiff, the court told the jury the product could be considered defective if it "permitted electrical current to contact the user in sufficient quantities as to injure said user." Defendant claims this instruction put Britt-Tech in the position of being an insurer of the product's safety and this is contrary to the law. However, defendant pulls this statement out of context. The entire instruction indicated the burden of proof was on the plaintiff to show "each and all" of the following propositions:

1. That the defendant sold the power washer;

2. That the defendant was engaged in the business of selling power washers.

3. That the power washer was in a defective condition in that it permitted electrical current to contact the user in sufficient quantities as to injure said user;

4. That such defective condition was unreasonably dangerous to the plaintiff;

5. That the plaintiff used the power washer in the intended manner or in a manner reasonably foreseeable by defendant;

6. That the power washer was expected to and did reach the plaintiff without substantial change in its condition,

that is, that the defect existed at the time defendant sold the power washer; and

7. That such defect was a proximate cause of personal injury or property damages suffered by plaintiff.

Taken as a whole, we find the instruction properly reflects the law of this state as reviewed in *Osborn v. Massey-Ferguson, Inc.*, 290 N.W.2d 893, 901 (Iowa 1980).

■ Defendant further claims it was error to refuse an instruction which would have told the jury that it was not to consider whether the wand should have been grounded, claiming the "undisputed testimony in the record from all experts is that grounding the wand or handle would not make the product safer for the consuming public." Plaintiff's expert did not so indicate and the court properly refused such an instruction.

■ The last claim of defendant is that the testimony of Jane's brother, Jon Reed, should not have been permitted concerning his opinion whether the power washer should have been grounded. Reed had been an electrician and defendant says there was insufficient foundation to allow him to express an opinion. Defendant cites no cases in support of its claim.

Reed testified he had been an electrician since 1976 and had done residential, farm, commercial, and small industrial electrical work. We find the trial court properly overruled the objection.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED FOR NEW TRIAL.

All Judges concur except OXBERGER, C.J., who concurs in part and dissents in part.

OXBERGER, C.J., (concurring in part and dissenting in part).

I concur with the decision that the judgment n.o.v. should be overturned, but disagree that the motion for a new trial should not also be reversed. Even accepting the different standard of review for a judgment n.o.v. and for a new trial, both rulings by the trial court were based on the inference that the jury acted out of passion and prejudice because it awarded more to the surviving family than to the estate. I cannot agree with the trial court's reasoning that we must infer there was prejudice because more money was awarded to the family. There is nothing else in the record to support this decision other than the inference drawn from the disparity of the awards.

The jury awarded $1,500,000 to Jane and $225,000 to the children. The court then concludes that *this* award is erroneous because the award to the estate was too low. This conclusion is reached despite the fact that there is support for the award to the family. Duane farmed 560 acres and had the incentive and opportunity to purchase additional farm land. He was described by those who knew him as a successful and competent farmer. He also had a sandblasting business and was talented in building and improving farm equipment. His life expectancy was forty-six years. The award to the family reflects he could have provided an average of $36,000 per year to support his family. The award to the family is supported by the evidence.

If there is any room for complaint in the jury's verdict, it is on the part of the plaintiff for an award to the estate that is too small. To find the award to the family erroneous because the other award is too low is to penalize Jane because she did not get as much money as she should as administrator. We are to overturn damages fixed by a jury only under the most compelling circumstances. *Wroblewski v. Linn-Jones FS Services, Inc.*, 195 N.W.2d 709, 714 (Iowa 1972). I find an award to the estate that is too small far from a compelling reason to overturn a jury verdict to the family which is supported by the evidence. I would reverse the judgment n.o.v. and the grant of a motion for a new trial.